UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS WILLIAMS,

       Plaintiff,                    Case No. 05-70432

v.                                 District Judge Paul D. Borman
                                   Magistrate Judge R. Steven Whalen

CORRECTIONS OFFICER
DEBORAH A. RIES, INSPECTOR
CYNTHIA M. ACKER, RESIDENT
UNIT MANAGERS TERRI HUFFMAN,
and PENNY LANDRUM, GREIVANCE
COORDINATOR LARRY McMILLIAN,
and WARDEN SHERRY L. BURT,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss under Fed.R.Civ.P. 12(b) and 42 U.S.C. §1997e(a) and for Summary Judgment [Docket #25] by Defendants Deborah A. Ries, Cynthia M. Acker, Terri Huffman, Penny Landrum Larry McMillian, and Sherry L. Burt, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).[1] For the reasons set forth below, I recommend granting Defendants' motion, dismissing the case without prejudice.

---

[1] Plaintiff's Amended Complaint [Docket #13] added a seventh Defendant, Larry Brown, who did not join in the motion to dismiss.

## I. FACTUAL BACKGROUND

Plaintiff, a prisoner within the Michigan Department of Corrections (MDOC), filed suit against Defendants on February 14, 2005.[2] He alleges that on October 22, 2003, Defendant Ries, a correctional officer acting on the instruction of Defendant Acker, an inspector, confiscated 105 letters and 200 photographs from his prison cell. *Complaint* at ¶10. Plaintiff states that he was issued a Notice of Intent to Conduct a Hearing (NOI) form and a contraband removal form. *Id.* at ¶11. He claims that neither Ries or Acker gave him a reason for confiscating apparently non-contraband material or informed him of the charges against him, which he alleges left him unable to prepare a defense for the hearing *Id*. at ¶12. He filed a grievance against Ries on October 31, 2003, submitting it to Defendant McMillan, a grievance coordinator. *Id.* at ¶14. However, McMillan returned the grievance to Plaintiff unprocessed, with a note stating that he did not believe that Plaintiff had given Acker enough time to resolve the complaint on an informal basis. *Id.* at ¶¶15-16. Plaintiff refiled his grievance against Ries on November 4, 2003, which was denied at Step I of the grievance procedure by Defendant Huffman on November 18, 2003. *Id.* at ¶18. The same grievance was later denied at Step II by Defendant Burt, the institution's warden. *Id.* In the meantime, Plaintiff had filed a second grievance, this time against grievance coordinator McMillan, based on his refusal to process the original grievance against Ries. *Id.* at ¶19. On December

---

[2]The events in question began while Plaintiff was housed at the Southern Michigan Correctional Facility in Jackson, Michigan. *Complaint* at ¶3. The MDOC transferred Plaintiff to the Ojibway Correctional Facility (OCF) in the upper peninsula of Michigan on December 8, 2003. *Id.* at ¶23.

2, 2003, Acker sent a memo to Defendant Landrum, Assistant Resident Unit Manager (ARUM), stating that all of the confiscated material should be returned to Plaintiff with the exception of six letters and one envelope. *Id.* at ¶21.[3] On December 8, 2003, the MDOC transferred Plaintiff to Ojibway Correctional Facility (OCF). *Id.* at ¶23. On January 17, 2004, ARUM Derry (a non-defendant) conducted a hearing at OCF, at which time Plaintiff alleges that he received 99 of the 105 confiscated letters and 153 of the 200 confiscated photographs. *Id.* at ¶¶25-27.

Plaintiff alleges that the prison's failure to hold a prompt hearing after confiscating his property as well as declining to inform him of the charges against him violates his due process rights. He alleges further that McMillian's refusal to process his original grievance against Ries denied him access to the courts. He claims that his December 8, 2003 transfer to OCF, which he characterizes as "five minute[s] away from Wisconsin," several hours further from his "home city of Detroit" than his former prisons, was executed in retaliation for his filing grievances against MDOC employees. *Objections to Defendants' Motion to Dismiss* at Exhibit E. He states that at the January, 2004 hearing he was not given a reason

---

[3]Defendant Acker states that in October, 2003 prison staff discovered evidence that an employee at Riverside Correctional Facility, where Plaintiff had been held until June, 2003, had engaged in an "inappropriate and overly familiar relationship with Plaintiff." *Motion to Dismiss*, Exhibit F. *Affidavit of Cynthia Acker* at ¶3. She states that Ries confiscated the correspondence based on the belief that the Riverside employee was writing to Plaintiff, adding that based on the advice of Defendant Larry Brown, an inspector at the Riverside prison, she delayed scheduling Plaintiff's hearing to avoid alerting the suspected employee of the investigation. *Id.* at ¶ 7-8. She indicates that prison staff determined that the six letters and one envelope retained by the prison were deemed contraband on the basis that they showed evidence of an improper relationship. *Id.* at ¶9.

-3-

for the property confiscation or informed of the charges against him. *Complaint* at ¶25-27. He maintains that Acker's December 2, 2003 directive to return only a portion of his property deprived him of his due process right to argue at the hearing (conducted six weeks later) that all of his property should be returned. *Id.* at ¶28.

## II.  STANDARD OF REVIEW

Pursuant to 42 U.S.C.A. § 1997e (a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

## III.  ANALYSIS

Defendants premise their motion for dismissal on Plaintiff's failure to abide by the exhaustion of remedies requirements of 42 U.S.C. §1997e.  Defendants contend that Plaintiff has not exhausted his administrative remedies as to Defendants Burt and Huffman. *Motion to Dismiss* at 5.  In addition to the absence of documentation indicating that Plaintiff's exhausted his administrative remedies as to these Defendants, Burt states that her actions pertaining to the events in question were limited to denying Plaintiff's grievances against Ries and McMillan at Step two of the administrative process. *Motion to Dismiss*, Exhibit D, *Affidavit of Sherry Burt* at ¶¶4-5.  Likewise, Huffman states that her involvement consisted of responding to Plaintiff's Step one grievance against McMillan. Id., Exhibit E, *Affidavit of Terri Huffman* at ¶4.

The inclusion of unexhausted claims mandates a dismissal of the entire complaint,

even if those claims are otherwise properly stated. *See Freeman v. Francis,* 196 F.3d 641, 643-44 (6th Cir. 1999).   In *Jones-Bey v. Johnson,* 407 F.3d 801, 807 (6th Cir. 2005) the court adopted a "total exhaustion" rule, requiring that unless all claims against all Defendants are exhausted, the complaint must be dismissed in its entirety:

> "We adopt the total exhaustion rule, in large part, because the plain language of the statute dictates such a result. Section 1997e(a) states that no 'action' shall be brought in federal court until administrative remedies have been exhausted. However, in subsection (c), the statute allows district courts to dismiss frivolous "actions" *or* 'claims.' 42 U.S.C. § 1997e(c)(1) & (2). Congress's use of the word 'claims' in subsection (c)(2) indicates that 'claims' are individual allegations and 'actions' are entire lawsuits."

Further, a prisoner must specifically name all individuals in the grievance, giving notice to prison officials of problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott,* 249 F.3d 493, 505 (6th Cir.2001).  In *Freeman, supra,* 196 F.3d at 644 the court reasoned that  "the importance of using the prison grievance process [is] to alert prison officials to problems."  In addition, exhaustion under § 1997e(a) requires an inmate to complete all levels of the administrative review process before filing an action in federal court. *Id.* at 645.  A prisoner "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).  Conversely, an inmate has not properly exhausted a claim against a prison official "if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process. . . ." *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003).

Plaintiff's *Objections to Defendants' Motion to Dismiss*  presents the interesting

argument that he accomplished a *de facto* exhaustion of remedies against Huffman since she was the officer who responded to his Step one grievance against McMillan. *Id.* at 5. He also asserts that because his initial grievance of Ries referenced a discussion that he had with his RUN and ARUN, he "introduced" Huffman into the grievance process to the extent that she should be construed as exhausted. *Id*. He also alleges that Huffman was included in an a grievance accusing the MDOC of retaliatory motive in transferring him to a remote facility (JMF031203138024Z). *Id.* at Exhibits E, I.[4]

Plaintiff's reasoning runs afoul of the Sixth Circuit's requirement that a prisoner list all individuals in his grievance filings for the purpose of alerting prison officials to problems before they reach federal court. *Freeman, supra* 196 F.3d at 644. *See also Curry, supra,* 249 F.3d at 505. The fact that Huffman processed and denied Plaintiff second grievance did not, in and of itself, serve to put her on notice that she had been incorporated into the substance of the grievance as a potential defendant. Further, although Huffman was arguably referenced by job title in his first grievance, she appears to have been mentioned only for the purpose of establishing that he had attempted to settle his dispute with Ries informally before submitting a grievance. His first grievance does not contain complaints about Huffman's behavior. In addition, Grievance Indentifier JMF031203138024Z, pertaining to his retaliatory transfer claim, cannot be used to demonstrate exhaustion against Huffman since he failed to identify her at all three steps of

---

[4]This grievance appears to have exhausted his *claim* of retaliation, although as discussed above, did not exhaust as to Huffman herself.

the administrative process. *Objections to Defendants' Motion to Dismiss,* Exhibits E, I.

Likewise, Plaintiff fails to establish that Warden Burt was exhausted. In addition to arguing that Burt engrafted herself onto the grievance by simply processing Plaintiff's Step II responses, he argues that grieving Burt independently on the grounds that she made an improper Step II decision would "duplicate" his already-filed grievances against McMillan and Ries. *Objections to Defendants' Motion to Dismiss* at 4. However, this argument must also be rejected. Plaintiff's contention that Burt commit improprieties by conducting an improper Step two review does not "duplicate" his accusations against Ries or McMillan. In addition, Plaintiff's current argument stands contrary to his recognition - illustrated by his filing a separate grievance against McMillan for his unwillingness to process a grievance against Ries - that Burt could not be exhausted merely by having participated in the review of an unrelated complaint.[5]

While the bright-line total exhaustion rule functions in large part to promote the economy of judicial resources, in the present case, requiring Plaintiff to refile his action after completing the administrative requirements would also benefit him - allowing the Court to examine the relative merits of his claims more effectively.

---

[5]Further, I note that aside from Plaintiff's failure to exhaust, his claims against Burt, as presently expressed, may fail on their lack of merit. *See Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)(Defendants reviewing grievances filed against subordinates, absent a finding that they also "directly participated, encouraged, authorized or acquiesced" in the alleged constitutional violations of the prisoner's rights was not sufficient to establish liability.)

## **CONCLUSION**

I recommend, for the reasons stated above, that this case be DISMISSED WITHOUT PREJUDICE, pursuant to 42 U.S.C. §1997e(a).

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


S/R. Steven Whalen
R. STEVEN WHALEN

UNITED STATES MAGISTRATE JUDGE

Dated: February 8, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 8, 2006.

                                          S/Gina Wilson
                                          Judicial Assistant